IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CATHRINE VEIKOS,**<br><br>*Plaintiff*,<br><br>v.<br><br>**TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,**<br><br>*Defendant*. | **Case No. 2:20-cv-04408-JDW** |

## MEMORANDUM

For the public to have confidence in the work of the courts, it must have as much visibility as possible into the work that the courts do. After all, "[t]he Judicial Branch belongs to the American people," and "Americans cannot keep a watchful eye . . . if they are wearing blindfolds." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). Motions to seal limit that visibility. For that reason, this Court has emphasized the showing that a party must make before the Court will seal judicial records. *See, e.g.*, *Avco Corp. v. Turner*, Case. No. 2:20-cv-04073, 2021 WL 3487321 (E.D. Pa. Aug. 9, 2021); *Kivett v. Neolpharma, Inc.*, Case No. 2:20-00664, 2021 WL 1209844 (E.D. Pa. Apr. 21, 2021); *Midwest Athletics And Sports Alliance LLC v. Ricoh USA, Inc.*, Case No. 2:19-cv-00514, 2021 WL 915721 (E.D. Pa. Mar. 10, 2021).

The Trustees of the University of Pennsylvania has asked the Court to seal certain exhibits that the parties will submit in support of their motions for summary judgment. The documents in question will be the heart of the case—comparator documents that demonstrate whether Penn treated Plaintiff Catherine Veikos

differently from similarly situated tenure candidates. Penn has not demonstrated that its interest in maintaining the secrecy of these documents outweighs the public's right of access.

## I. BACKGROUND

Ms. Veikos claims that Penn discriminated against her on the basis of her gender and familial status when it denied her tenure. She bases her argument in part on Penn's treatment of other tenure candidates who she argues are comparators. Like most institutions, Penn conducts a broad review of tenure candidates' work before making the decision to award tenure. It asks for input from internal and external reviewers. When Penn solicits input from an external reviewer, it explains its policy that "external letters of evaluation are held in confidence. However, in the event of litigation or a government investigation, the candidate or others may gain access to the information contained in these letters." (*E.g.*, ECF No. 40-2.)

Both parties have told the Court that summary judgment briefing will include the tenure review files for Ms. Veikos and other tenure-track candidates at Penn's School of Design. These files contain external reviewers' letters and other documents where reviewers provide their thoughts on the merits of a tenure candidate. Penn asks the Court to place these tenure review exhibits under seal, arguing that without confidentiality, the integrity of future tenure reviews would be at risk. Ms. Veikos opposes Penn's motion.

## II. STANDARD OF REVIEW

The common law presumes that the public has a right of access to judicial materials. *See In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 924 F.3d

662, 672 (3d Cir. 2019). To overcome the common law presumption to the public's right of access to judicial materials, a movant must show that an interest in secrecy outweighs the presumption by demonstrating that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure. *See id.* Under Third Circuit law, a party seeking to file material under seal must make a specific showing, and "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). As the Court has noted, this "arduous standard reflects the importance of the public's right to access public records, including those that are part of judicial proceedings." *Midwest Athletics and Sports Alliance LLC*, 2021 WL 915721, at *1 (E.D. Pa. Mar. 10, 2021).

## III.   DISCUSSION

Motions to seal require a Court to strike a balance between the public's right of access and the movant's interest in secrecy. The Court therefore must consider the interests on each side of the scale.

### A.   The Public's Right of Access

The public's right of access is meant, in part, to "provide the public with . . . a better perception of [the judicial system's] fairness." *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 924 F.3d at 672 (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)). Public access "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *Id.* Accordingly, the "strongest arguments for access apply to materials used as the basis for a judicial decision of the merits of the case, as by summary

judgment." 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2042, at 234 (3d ed. 2010).

Because Ms. Veikos brings a discrimination claim, she must produce evidence that similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination. *See Taylor v. Brandywine Sch. Dist.*, 202 F. App'x 570, 575 (3d Cir. 2006) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999)). Evidence about Penn's treatment of other tenure candidates will be at the heart of the parties' arguments—a fact that both parties have acknowledged in their submissions. Because the documents will be at the core of the parties' arguments, the public has a particularly strong interest in access to the files.

### B. Penn's Interest In Secrecy

#### 1. The kind of information that courts will protect

The tenure review files are not the types of information that courts protect. At a high level, the documents constitute comparator evidence. Penn has not shown that courts normally protect comparator evidence by placing it under seal. Nor, in the Court's experience, is comparator evidence the type that usually gets protected. More specifically, Penn has not shown that tenure review files are the type of information that courts will protect with a sealing order. Indeed, the fact that Penn alerts external reviewers to the possibility that the candidate or "others" might get access to the information in the event of litigation (ECF No. 40-1) demonstrates that it is information that could be disclosed to third parties, including the public, in litigation.

Penn points to cases where courts protected personnel and peer-review documents during discovery to show these exhibits contain the type of information courts seal. Yet courts apply a different standard when they preserve the confidentiality of discovery materials and when they preserve the confidentiality of court documents, as is the issue here. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d at 670. The standard for sealing documents is analytically distinct from, and more rigorous than, the standard for preserving confidentiality in of discovery materials. In *Goode v. Camden City Sch. Dist.*, No. CV 16-03936 (RBK/JS), 2019 WL 6243156 (D.N.J. Nov. 22, 2019), which Penn also cites, the district court sealed personnel records that contained personally identifying information for non-party teachers. *Id.* at *20. By contrast, Penn does not seek to seal these exhibits to protect personally identifying information of the reviewers. Rather it seeks to shield from public view the substance of the tenure reviews themselves. Without similar concerns about personally identifying information, the exhibits before this Court implicate a different balance of interests than those at issue in *Goode*.

2. **Disclosure will work a clearly defined and serious injury to the party seeking closure**

Penn also has not shown a clearly defined injury from the disclosure of the tenure review files. It suggests that the public disclosure of the files would chill future tenure reviews because external reviewers might not participate. But that broad allegation of harm does not satisfy Penn's burden. It bears repeating that Penn has consistently warned external reviewers that their reviews might be disclosed in litigation. That warning has not chilled reviewers' participation. Penn offers no reason to think that disclosure here—the very event about which Penn cautions—will have a

5

greater impact on reviewers' willingness to participate in the tenure review process. While no single formula will satisfy this burden, the Court needs some detail about the harm that will result. For example, Penn offers no statements from frequent reviewers stating they will alter future reviews of tenure candidates. Nor does Penn offer any evidence reviewers have previously brought concerns about the possibility of reviews being made public during litigation. In fact, the dearth of cases addressing this issue suggests that the possibility of public disclosure is a remote one that is unlikely to influence any potential external reviewer.

### IV. CONCLUSION

The common law right of access to judicial records is not absolute, but it is not easily overcome either. Penn has not carried the heavy burden necessary to prevent the public from accessing the judicial records on which they will rely to mount their arguments. Thus, the Court cannot seal these documents from public view and will deny Penn's motion. An appropriate Order follows.

**BY THE COURT**

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

September 22, 2021