**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CATHRINE VEIKOS<br><br>Plaintiff,<br><br>v.<br><br>TRUSTEES OF THE<br>UNIVERSITY OF PENNSYLVANIA<br><br>Defendant. | Civil Action No. 2:20-cv-04408 |

<u>**DEFENDANT'S PRETRIAL MEMORANDUM**</u>

Defendant Trustees of the University of Pennsylvania ("Penn") respectfully submits this Pretrial Memorandum pursuant to the Court's Amended Scheduling Order dated April 29, 2022 (Dkt. No. 21), the Court's Policies and Procedures, Federal Rule of Civil Procedure 26(a)(3), and Rule 16.1(c) of the Local Rules of the United States District Court for the Eastern District of Pennsylvania.

## I.     <u>NATURE OF THE ACTION AND BASIS FOR JURISDICTION</u>

Plaintiff Cathrine Veikos ("Plaintiff") filed this action against Penn on September 9, 2020, alleging gender discrimination and retaliation in violation of Title VII, the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). Plaintiff claims that Penn denied her tenure in 2011 and 2012 because of her gender, withdrew an offer of a 1-year non-tenured teaching appointment in retaliation for internal complaints of gender discrimination, and denied her tenure in 2012 in retaliation for complaining about alleged gender discrimination.  The Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## II.    <u>FACTUAL SUMMARY OF PENN'S CONTENTIONS</u>

Professor Veikos was denied tenure in the Architecture Department of Penn's School of Design in 2011, and again in 2012 when it reconsidered her candidacy.  External reviewers – tenured faculty at other universities – expressed doubts about Professor Veikos's scholarship and productivity, and the faculty in Plaintiff's Department ultimately recommended against a grant of tenure by a vote of 5-2.  An Ad Hoc Committee consisting of two Professors in her Department did not support Professor Veikos's candidacy, and the School of Design's Personnel Committee voted three separate times to deny tenure.  The Dean of the School of Design, Marilyn Taylor, concluded in the 2011 and 2012 reviews that Professor Veikos was not qualified for tenure and declined to recommend Professor Veikos to Penn's Provost for further review.

Tenure at Penn is a lifetime appointment to the faculty.  It is granted when a candidate demonstrates significant productivity and thought leadership in an academic field.  As shown by the widespread expression of doubt about her scholarship and qualifications for a lifetime appointment to the faculty, Professor Veikos failed to meet that standard.  She acknowledges, but disagrees with, the criticisms of her work expressed by tenured Penn faculty members and scholars from other universities.  She also takes issue with almost every aspect of her tenure review, from the letter that was sent to external reviewers soliciting their assessments to the compilation of her dossier, to Penn's generous decision to right Plaintiff's perceived wrongs by affording her an unheard of second tenure review.  In doing so, Plaintiff accuses *13 tenured Penn faculty members* who participated in the tenure review process of discriminating against her because she is a woman and retaliating against her for complaining of discrimination.

III.   <u>**DAMAGES**</u>

Even if Plaintiff can prevail on liability, her recoverable damages are limited.  *First*,
Plaintiff quickly found a new job, earning compensation only slightly below the amount she
earned at Penn.  For the most part, she has successfully mitigated her damages.  *Second*, as Penn
explained in its Motion *in Limine* to Preclude Evidence Related to Tuition Benefits Damages
(Dkt. No. 72), significant portions of Plaintiff's claimed economic damages for lost tuition
reimbursement benefits, which she is seeking on behalf of a 16-year son, are not recoverable.
*Third*, any potential emotional distress damages would be modest, as Plaintiff has offered no
medical evidence of emotional distress as a result of her denial of tenure at Penn.  *Fourth*,
Plaintiff's compensatory and punitive damages under Title VII are capped at $300,000, and
punitive damages are unavailable under the PHRA.  Moreover, any consideration of punitive
damages under the PFPO is for the Court, rather than the jury.  *Finally*, Plaintiff is not entitled to
punitive damages under any applicable statutes because she cannot demonstrate that Penn
engaged in conduct that is malicious, willful, or recklessly indifferent to her rights.

IV.   <u>**WITNESS LIST**</u>

In addition to any witnesses identified by Plaintiff, Penn may call the following fact
witnesses at trial to testify regarding liability[1]:

A.   **Plaintiff Cathrine Veikos**

631 62nd Street
Oakland, CA 04609

Plaintiff will be cross examined about various aspects of her employment with and performance
at Penn, including, but not limited to: (1) the tenure track position for which she was appointed;
(2) her reappointment to her tenure-track faculty position, including any feedback she was
provided regarding her progress toward tenure; (3) her request for an extension of her tenure
track probationary period and request to defer her tenure review until her terminal year at Penn;

---

[1]     As is explained in Section X, <u>infra</u>, Penn will file a few motions *in limine*.  If those motions are denied,
some or all of the witnesses identified below will be expected to testify about those issues.

(4) her academic and scholarly work completed (or in progress) during her tenure track probationary period; (5) preparation of her tenure dossier and case in 2011 and 2012; (6) her tenure review in 2011 and 2012; (7) discussions she had with Penn employees regarding the potential for a one-year appointment in 2012; (8) any complaints she made regarding alleged unfair or discriminatory treatment; (9) any alleged reputational harm and/or emotional distress she claims to have experienced; and (10) her efforts to mitigate her alleged damages, including her current position at California College of the Arts (and compensation and benefits she has received in that position).

**B.    Marilyn Jordan Taylor**

> c/o Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA 19103

Dean Taylor may be called to testify about: (1) Penn's expectations and process for tenure; (2) Plaintiff's 2011 tenure review; (3) the decision to allow Plaintiff to submit additional evidence for consideration by the Personnel Committee; (4) Penn's response to realizing that the solicitation letter sent to external reviewers omitted language regarding Plaintiff's extension of her tenure probationary period; (5) Penn's decision to afford Plaintiff a new tenure review in 2012; (6) discussions with Plaintiff regarding the potential for a one-year appointment at Penn while Plaintiff went through her re-review; (7) Plaintiff's tenure review in 2012; (8) Plaintiff's qualifications, or lack thereof, for tenure; (9) concerns raised by Plaintiff regarding her 2011 tenure review; and (10) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

**C.    Dr. William Braham**

> c/o Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA 19103

Dr. Braham may be called to testify about: (1) Plaintiff's appointment; (2) Plaintiff's reappointment review; (3) Penn's expectations and process for tenure; (4) preparation of Plaintiff's tenure case in 2011; (5) Plaintiff's 2011 tenure review; (6) Plaintiff's submission of additional evidence for consideration by the Personnel Committee; (7) Penn's response to realizing that the solicitation letter sent to external reviewers omitted language regarding Plaintiff's extension of her tenure probationary period; (8) Plaintiff's tenure review in 2012; (9) Plaintiff's qualifications, or lack thereof, for tenure; (10) concerns raised by Plaintiff regarding her 2011 tenure review; and (11) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

**D.    Dr. David Leatherbarrow**

> c/o Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA 19103

Dr. Leatherbarrow may be called to testify about: (1) Plaintiff's appointment; (2) Plaintiff's reappointment review; (3) Penn's expectations and process for tenure; (4) preparation for Plaintiff's tenure case in 2011; (5) Plaintiff's 2011 tenure review; (6) Penn's decision to afford Plaintiff a second tenure review in 2012; (7) preparation of Plaintiff's tenure case in 2012; (8) Plaintiff's tenure review in 2012; (9) Plaintiff's qualifications, or lack thereof, for tenure; (10) concerns raised by Plaintiff regarding her 2011 tenure review; and (11) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

     **E.**     **Dr. Eugenie Birch**

        c/o Morgan, Lewis & Bockius LLP
        1701 Market Street
        Philadelphia, PA 19103

Dr. Birch may be called to testify about: (1) Penn's expectations and process for tenure; (2) Plaintiff's 2011 tenure review; (3) the Personnel Committee's evaluation of additional evidence submitted by Plaintiff; (4) the Personnel Committee's evaluation of external reviewer responses to outreach regarding omitted language in the solicitation letter; (5) Plaintiff's tenure review in 2012; (6) Plaintiff's qualifications, or lack thereof, for tenure; and (7) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

     **F.**     **Marion Weiss**

        c/o Morgan, Lewis & Bockius LLP
        1701 Market Street
        Philadelphia, PA 19103

Marion Weiss may be called to testify about: (1) Plaintiff's appointment; (2) Plaintiff's reappointment review; (3) Penn's expectations and process for tenure; (4) Plaintiff's 2011 tenure review; (5) the Personnel Committee's evaluation of additional evidence submitted by Plaintiff; (6) the Personnel Committee's evaluation of external reviewer responses to outreach regarding omitted language in the solicitation letter; (7) Plaintiff's tenure review in 2012; (8) Plaintiff's tenure review in 2012; (9) Plaintiff's qualifications, or lack thereof, for tenure; and (10) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

     **G.**     **Dr. Lynn Hollen Lees**

        c/o Morgan, Lewis & Bockius LLP
        1701 Market Street
        Philadelphia, PA 19103

Dr. Lees may be called to testify about: (1) Penn's expectations and process for tenure; (2) Plaintiff's concerns regarding her tenure review process; (3) Penn's response to Plaintiff's

concerns regarding her tenure review process; and (4) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

**H.    Ali Rahim**

       c/o Morgan, Lewis & Bockius LLP
       1701 Market Street
       Philadelphia, PA 19103

Ali Rahim may be called to testify about: (1) Plaintiff's reappointment review; (2) Penn's expectations and process for tenure; (3) Plaintiff's 2011 tenure review; (4) Plaintiff's tenure review in 2012; (5) Plaintiff's tenure review in 2012; (6) Plaintiff's qualifications, or lack thereof, for tenure; and (7) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

**I.    Witold Rybczynski**

       c/o Morgan, Lewis & Bockius LLP
       1701 Market Street
       Philadelphia, PA 19103

Witold Rybczysnki may be called to testify about: (1) Plaintiff's appointment; (2) Plaintiff's reappointment review; (3) Penn's expectations and process for tenure; (4) Plaintiff's 2011 tenure review; (5) Plaintiff's tenure review in 2012; (6) Plaintiff's tenure review in 2012; (7) Plaintiff's qualifications, or lack thereof, for tenure; and (8) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

**J.    Dr. Dana Tomlin**

       c/o Morgan, Lewis & Bockius LLP
       1701 Market Street
       Philadelphia, PA 19103

Dr. Tomlin may be called to testify about: (1) Penn's expectations and process for tenure; (2) Plaintiff's 2011 tenure review; (3) the Personnel Committee's evaluation of additional evidence submitted by Plaintiff; (4) the Personnel Committee's evaluation of external reviewer responses to outreach regarding omitted language in the solicitation letter; (5) Plaintiff's tenure review in 2012; (6) Plaintiff's qualifications, or lack thereof, for tenure; and (7) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

**K.    Dr. Frank Matero**

       c/o Morgan, Lewis & Bockius LLP
       1701 Market Street
       Philadelphia, PA 19103

Dr. Matero may be called to testify about: (1) Plaintiff's appointment; (2) Plaintiff's reappointment review; (3) Penn's, expectations and process for tenure; (4) Plaintiff's 2011 tenure review; (5) Plaintiff's tenure review in 2012; (6) Plaintiff's tenure review in 2012; (7) Plaintiff's qualifications, or lack thereof, for tenure; and (8) Plaintiff's allegations that she was treated unfairly or discriminated against on the basis of her gender and/or retaliated against.

      **L.**    **Richard Wesley**

> c/o Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA 19103

In the event that Penn's motion *in limine* addressing stray remarks is denied, Richard Wesley may be called to testify about those alleged comments or extraneous discussions Plaintiff claims to have had with him.

Presently, Penn does not expect to call any witnesses who will testify solely about damages.

Penn does not anticipate the need for testimony from unavailable witnesses, but any of its witnesses are later determined to be unavailable for trial, Penn reserves the right to take trial depositions or to designate relevant portions of their deposition testimony. Penn also reserves the right to amend this list of witnesses upon reasonable notice, and the right to call additional witnesses as necessary to present direct and/or rebuttal testimony or to respond to any witness(es) to be called by Plaintiff, even if outside the scope of the above-listed topics.

## V.    <u>EXPERT WITNESSES</u>

Plaintiff has identified a damages expert, Kristin Kucsma. For the reasons set forth in Penn's Motion *in Limine* to Preclude Evidence Related to Tuition Benefits Damages (Dkt. No. 72), the Court should not permit Ms. Kucsma to provide expert testimony about speculative claims for damages, and in particular, claims for damages based on purported losses of tuition reimbursement benefits. Additionally, for the reasons set forth in Section XI, <u>infra</u>, any testimony on economic damages should be presented to the Court only, not the jury, as issues of backpay and front pay are for the Court to decide.

Penn will present Professor Harrison Fraker as an expert witness on liability.  Professor Fraker's curriculum vitae was submitted previously in connection with Plaintiff's pending motion to exclude the testimony.  See Dkt. No. 47-2.  Professor Fraker will explain: (1) the expectations for a grant of tenure at a major university such as Penn; (2) the importance of consensus among reviewers; and (3) the significance that is attached to criticisms from other faculty members and external reviewers.  He will testify about the tenure review process, which are quite complex, and describe the role of faculty members, department chairs, personnel committees, and ultimately deans in the various levels of a tenure review.  He also will be asked whether, based on his experience, he would expect a candidate with a dossier like Plaintiff's to be granted tenure at a major university.  Professor Fraker's expert opinions, and the basis for those opinions, are described in greater detail in Penn's Opposition to Plaintiff's Motion to Exclude Professor Fraker (Dkt. No. 58).

## VI.   SCHEDULE OF EXHIBITS AND EVIDENTIARY OBJECTIONS

Pursuant to the Court's February 11, 2022 Scheduling Order (Dkt. No. 60), as amended on April 29, 2022 (Dkt. No. 61), the Parties exchanged proposed exhibit lists.  Penn's proposed exhibit list is attached hereto as Exhibit A.  Penn's list of proposed exhibits, exchanged with Plaintiff, does not include documents that may be used by Penn for the purpose of impeachment or in response to any exhibits identified by Plaintiff after Penn submits this Pretrial Memorandum.  Penn reserves its right to identify and use such documents at trial.  Additionally, pleadings (with attachments), discovery responses, and depositions (including affidavits/sworn statements) may also be used at trial as permitted by the Federal Rules of Evidence and the Local Rules for the Eastern District of Pennsylvania to the extent necessary for impeachment or as they reflect admissions by Plaintiff; such pleadings and discovery material are not listed here.  Copies of demonstrative exhibits will be supplied prior to or during trial.  Penn reserves the right to offer

into evidence at trial any or all of the exhibits identified in Exhibit A and to amend this list of exhibits upon reasonable notice.  In addition to these documents, Penn also reserves the right to introduce and/or use at trial: (1) any document produced by Plaintiff, or any third party, subsequent to the date of its list of proposed exhibits; (2) summaries, enlargements, charts, slides, other visual representations, pictorials, demonstrations, and/or graphs depicting or relating to any document or any portion of any document listed in its list of proposed exhibits; (3) charts or summaries of the contents of any voluminous writing or recording listed in its list of proposed exhibits; (4) rebuttal exhibits; and/or (5) any document that is discovered by Penn after the date of its list of proposed exhibits.  The listing of any document by Penn is not an admission or concession that such document is relevant or otherwise admissible.

In accordance with the Court's direction in its February 11, 2022 Scheduling Order (Dkt. No. 60), as amended on April 29, 2022 (Dkt. No. 61), the Parties anticipate that they will be able to submit a joint exhibit list (with the exception of the proposed exhibits listed as objected to in their respective pretrial memoranda).

By the January 24, 2023 deadline set forth in the Court's February 11, 2022 Scheduling Order (Dkt. No. 60), Penn will serve its objections to Plaintiff's proposed exhibits.

## VII.   DESIGNATION OF VIDEOTAPED TRIAL TESTIMONY AND DEPOSITION TESTIMONY

At this time, Penn does not anticipate using videotaped trial testimony or offering deposition testimony affirmatively at trial.  However, to the extent that Plaintiff designates any testimony from Professor Annette Fierro, Caroline Constant, Michael Hays, or Helene Furjan, Penn intends to present all or portions its cross-examination of these witnesses from their videotaped trial depositions.  Penn submits the following designations on a provisional basis, subject to revision (counter-designation) after receipt of Plaintiff's designations

9

- Annette Fierro Dep. 185:24-186:16; 186:19-12; 187:16-188:8; 188:13; 188:18-189:1; 189:7-21; 190:8-19; 190:24-191:7; 191:13-192:19; 192:23-194:13; 194:18-196:19; 196:24-198:22; 199:6-204:2; 204:8-206:11; 206:19-216:6; 216:9-220:1; 220:7-222:22; 223:4-226:19; 227:1-20; 227:24-237:5 |

- Caroline Constant Dep. 26:18-31:12; 31:18-33:22; 34:2; 34:5-34:8; 34:11-34:16; 34:19-34:21; 34:24-35:2; 35:5-35:14; 35:17-35:21; 35:24-36:4; 36:7-36:22; 37:4-37:18; 37:22-38:3; 38:8-38:16; 38:20-39:2; 39:9-39:13; 29:22-40:8; 40:12-40:14; 40:19-41:9; 42:4-42:5; 42:17-42:19; 43:14-44:23; 46:14-47:8; 48:7-49:6; 49:10-49:12; 49:17-49:20; 49:23-50:17; 50:20-51:8; 51:14-52:8; 53:1-53:14; 53:14-54:10; 54:15-55:15; 55:21-56:6; 56:9-57:12; 57:24-59-19; 60:1-60:2; 66:15-69:15; 70:12-70:24.

- Michael Hays Dep. 25:22-27:16; 27:24-36:9; 36:14-42:12; 42:19-45:3; 45:15-49:22; 50:1-50:14; 50:19-20.

Helen Furjan's trial deposition is scheduled for December 21, and Penn may designate testimony from that deposition after it takes place.

Penn also reserves the right to use videotaped deposition testimony from Plaintiff for impeachment purposes and to offer deposition testimony affirmatively at trial if a witness becomes unavailable to testify in person at the time of the trial.

## VIII.   <u>STIPULATIONS OF COUNSEL</u>

The Parties conferred and Plaintiff prefers not to stipulate to facts in advance of trial.

## IX.   <u>ESTIMATED NUMBER OF DAYS REQUIRED FOR TRIAL</u>

Defendant estimates that it will take approximately seven to ten days for trial, excluding jury selection.

X.    **OBJECTIONS TO ADMISSIBILITY OF ANTICIPATED EVIDENCE**

Defendant has filed motions *in limine* or will object to testimony about the following issues:

A.    To exclude evidence relating to and preclude any testimony about the Philadelphia Commission of Human Relations' investigation into and conclusions regarding Plaintiff's 2011 and 2012 Complaints of Discrimination because this information is irrelevant to Plaintiff's claims and would cause unfair prejudice, confuse the issues, and mislead the jury and constitute improper opinion testimony.

B.    To exclude evidence relating to extraneous evidence unrelated to Plaintiff's tenure review, consisting of (1) the handling of Plaintiff's application for a tenure track position at Penn in 1999, (2) alleged stray remarks made by Penn faculty members not involved in evaluating Plaintiff's tenure candidacy, and (3) alleged stray remarks of Professor Leatherbarrow that do not demonstrate actual bias and that are unrelated to Plaintiff or her tenure decisions.  This extraneous evidence is irrelevant and would cause unfair prejudice, confuse the issues, and mislead the jury.

C.    To exclude evidence relating to and any testimony about Penn's assessment of other candidates for tenure as each tenure case is evaluated on its own merits, many of these tenure cases were decided years before or after Plaintiff was evaluated for tenure, many of these tenure cases were decided by different faculty members, and, therefore, such information is irrelevant to Plaintiff's claims and would cause unfair prejudice, confuse the issues, mislead the jury, waste time, and cause undue delay (by requiring mini-trials for each tenure review).

D.    To exclude evidence related to the financial condition of Penn or its endowment fund because this evidence has nothing to do with proving liability, admitting it absent a showing that punitive damages are recoverable would substantially and unduly prejudice Penn, and it would cause undue delay, would confuse jurors, and could lead to a verdict on liability that is improperly influenced by evidence relating purely to damages.

E.    To exclude evidence relating to and preclude any testimony by Plaintiff's purported damages expert regarding alleged damages in the form of tuition reimbursement benefits for Plaintiff's minor son as speculative and based on a multitude of assumptions that may have never come to fruition, including the assumption that Plaintiff's son – who was five years old (at most) at the time of her tenure denial – would apply for admission to Penn, be accepted, and choose to attend.

     **F.**       To exclude evidence relating to and preclude any testimony about other current or former Penn employees' concerns or complaints regarding their tenure probationary period, the fairness of the tenure process, and/or gender discrimination in their evaluation for appointment, reappointment, and/or tenure because such concerns have no relevance to Plaintiff's claims and such information would cause unfair prejudice, confuse the issues, and mislead the jury.

     **G.**       To exclude evidence relating to and preclude any testimony about the process and/or outcome of other faculty searches, including one where Simon Kim was hired, as such decisions have no bearing on Plaintiff's claims and admission of such evidence would cause unfair prejudice, confuse the issues, and mislead the jury.

## XI.  ANTICIPATED LEGAL ISSUES

In addition to the motions *in limine* described above, Plaintiff filed a Daubert Motion to Preclude Testimony by Defendant's Designated Expert, Harrison S. Franker on October 21, 2021 (Dkt. No. 47).  On January 25, 2022, Penn filed its Opposition to Plaintiff's Daubert Motion (Dkt. No. 58) and Plaintiff filed her Reply in Support of her Daubert Motion to Preclude Testimony by Defendant's Designated Expert, Harrison S. Franker on January 28, 2022 (Dkt. No. 59).  This motion is still pending.

Penn requests that any expert testimony on Plaintiff's purported economic loss be presented solely to the Court, not the jury, as backpay and front pay determinations are for the Court, not the jury, to decide.  See, e.g., Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843 (2001) (holding that front pay under Title VII is not an element of compensatory damages); Donlin v. Philips Lighting North Am. Corp., 581 F.3d 73, 78 n.1 (3d Cir. 2009) (explaining in Title VII case that "back pay and front pay are equitable remedies to be determined by the court"); Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 (3d Cir. 2006) (relying on the statutory language of Title VII, which applies to damages recovery under the ADA, the court holds in an ADA action that "back pay remains an equitable remedy to be awarded within the discretion of the court"); Cmt. To 3d Cir. Model Jury Instruction 5.4.3 ("An award of back pay is

an equitable remedy; thus there is no right to jury trial on a claim for back pay."); Cmt. To 3d Cir. Model Jury Instruction 5.4.4. ("There is no right to jury trial under Title VII for a claim for front pay").  Additionally, under the PHRA, any determination of backpay or front pay is also a decision for the court, rather than the jury.  See Cortes v. R.I. Enterprises, Inc., 95 F. Supp. 2d 255, 262 (M.D. Pa. 2000) (acknowledging backpay as equitable relief and holding that, under the PHRA, "[n]on-legal, i.e., equitable claims, will be tried to the Court.") (Citing Wertz v. Chapman Twp., 741 A.2d 1272, 1279 (Pa. 1999)); see also Sample v. Keystone Mercy Health Plan, No. 12-3188, 2012 WL 5401015, at *4 (E.D. Pa. Nov. 5, 2012) (holding that, under the PHRA, a jury is required if *compensatory relief* is sought).   Furthermore, the plain language of the PFPO makes it clear that all monetary remedies are for the court to decide, rather than a jury.  Phila. Code § 9-1122(3) ("The *court* may grant any relief it deems appropriate….") (Emphasis added).

Should the Court agree, Penn respectfully requests that the Court bifurcate the trial, with evidence relating to liability presented to the jury and then, if the jury finds liability, the Parties can present evidence relating to damages to the Court.  Should the Court agree with Penn, Penn also respectfully submits that the Court not need to decide Penn's Motion *in Limine* to Preclude Evidence Related to Tuition Benefits Damages (Dkt. No. 72) because the Court can determine the relevance and weight to be attached to the evidence presented by Plaintiff's damages expert through Penn's cross-examination at trial.

Penn also submits that unless and until the Court makes a determination on whether there is sufficient evidence for the jury to consider punitive damages under Title VII, there should be no reference to Penn's assets, endowments or financial resources.  See Johnson v. Fed. Exp. Corp., No. 1:12-CV-444, 2014 WL 805995, at *12 (M.D. Pa. Feb. 28, 2014) (precluding a

13

plaintiff from offering evidence or testimony of a defendant's net worth or revenue in her opening statement or at any other time in the presence of the jury until the jury reached a verdict awarding punitive damages);  McGrane v. Shred-It USA, Inc., No. 07-98J, 2011 WL 1706777, at *2 (W.D. Pa. May 4, 2011) (precluding evidence related to a defendant's net worth prior to a finding that punitive damages were appropriate); Waters v. Genesis Health Ventures, Inc., 400 F. Supp. 2d 808, 813 (E.D. Pa. 2005) (same).


Dated:  December 2, 2022                          Respectfully Submitted,

                                                  By:  s/ Michael L. Banks
                                                  Michael L. Banks
                                                  A. Klair Fitzpatrick
                                                  MORGAN, LEWIS & BOCKIUS LLP
                                                  1701 Market Street
                                                  Philadelphia, PA  19103-2921
                                                  Tel:    215.963.5387/4935
                                                  Fax:    215.963.5001
                                                  Email:  michael.banks@morganlewis.com
                                                          klair.fitzpatrick@morganlewis.com

                                                  *Attorneys for Defendant Penn*

**CERTIFICATE OF SERVICE**

I, Michael L. Banks, hereby certify that a true and correct copy of the foregoing Defendant's Pretrial Memorandum was filed electronically and is available for viewing and downloading from the ECF system of the U.S. District Court for the Eastern District of Pennsylvania, and that I served the same via electronic filing on December 2, 2022 upon the following:

Julie A. Uebler
Evelyn Kallenbach
CONSOLE MATTIACCI LAW, LLC
1525 Locust Street, 9th Floor
uebler@consolelaw.com
kallenbach@consolelaw.com

Attorneys for Plaintiff

*/s/ Michael L. Banks*
Michael L. Banks