# Caroline Constant Final Designations

Designation List Report

 **Constant, Caroline**                                      2022-10-13

| Plaintiff Direct | 00:21:09 |
|---|---|
| **TOTAL RUN TIME** | **00:21:09** |



ID: CC_FINAL

## CC_FINAL - Caroline Constant Final Designations

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| 7:16 - 8:19 | **Constant, Caroline 2022-10-13** | 00:01:04 | CC_FINAL.1 |

| | | | |
|---|---|---|---|
| | 7:16 | Q. | Professor Constant, as you know, we're |
| | 7:17 | | taking your video deposition today to present to the |
| | 7:18 | | jury in Philadelphia in Cathrine Veikos's civil |
| | 7:19 | | rights trial, which is scheduled for January. |
| | 7:20 | | My understanding is that you |
| | 7:21 | | live in Boston; is that correct? |
| | 7:22 | A. | That's correct. |
| | 7:23 | Q. | Is that where you are right now? |
| | 7:24 | A. | Yes. |
| | 8:01 | Q. | Well, thank you for making yourself |
| | 8:02 | | available to testify today. |
| | 8:03 | | I want to start with an |
| | 8:04 | | invitation.  My understanding is you received an |
| | 8:05 | | invitation to serve as an external reviewer in |
| | 8:06 | | Cathrine Veikos's tenure case in the 2010 and 2011 |
| | 8:07 | | academic cycle; is that correct? |
| | 8:08 | A. | That's correct. |
| | 8:09 | Q. | Okay. |
| | 8:10 | A. | The letter was dated 2011. |
| | 8:11 | Q. | Okay.  And let's take a look at that. |
| | 8:12 | | You should have with you a |
| | 8:13 | | document that was pre-marked as Exhibit P-26, if you |
| | 8:14 | | could take a look at that. |
| | 8:15 | A. | Yes. |
| | 8:16 | Q. | Okay.  Is that the letter inviting you |
| | 8:17 | | to be an external reviewer in Professor Veikos's |
| | 8:18 | | case? |
| | 8:19 | A. | It is. |

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| 8:23 - 10:17 | **Constant, Caroline 2022-10-13** | 00:02:02 | CC_FINAL.2 |

| | | | |
|---|---|---|---|
| | 8:23 | | BY MS. UEBLER: |
| | 8:24 | Q. | All right.  This -- let's look at that |
| | 9:01 | | letter from January 21st, 2011.  It looks like it |
| | 9:02 | | was from Professor Braham. |
| | 9:03 | | Did you know Professor Braham |
| | 9:04 | | prior to receiving this letter from him? |
| | 9:05 | A. | I don't believe I knew -- have ever known |
| | 9:06 | | him personally, but I have heard of his reputation |
| | 9:07 | | as a scholar. |
| | 9:08 | Q. | What position did you hold at the time |

| DESIGNATION | SOURCE | | | DURATION | ID |
|---|---|---|---|---|---|
| | 9:09 | | this letter was sent? | | |
| | 9:10 | A. | I was a Professor of Architecture in the | | |
| | 9:11 | | Taubman College of Architecture and Urban Planning | | |
| | 9:12 | | at the University of Michigan. | | |
| | 9:13 | Q. | Okay. And so did you agree to write | | |
| | 9:14 | | an external review letter for Professor Veikos? | | |
| | 9:15 | A. | I did. | | |
| | 9:16 | Q. | All right. So looking back at | | |
| | 9:17 | | Exhibit P-26, this letter, which was dated | | |
| | 9:18 | | January 21st, appears to have a deadline of | | |
| | 9:19 | | February 23rd of 2011. | | |
| | 9:20 | | Did you feel you had sufficient | | |
| | 9:21 | | time to prepare an assessment of Professor Veikos's | | |
| | 9:22 | | scholarship in that time? | | |
| | 9:23 | A. | I recall that I was particularly busy during | | |
| | 9:24 | | that period, so I actually worked very quickly to | | |
| | 10:01 | | send my evaluation early because of my impending | | |
| | 10:02 | | teaching requirements and other requirements. | | |
| | 10:03 | Q. | Okay. At that time, so the 2010-2011 | | |
| | 10:04 | | academic year, had you had prior experience as an | | |
| | 10:05 | | external reviewer in other tenure cases? | | |
| | 10:06 | A. | Yes, I had. I don't recall the exact | | |
| | 10:07 | | number, but several tenure cases, and also a couple | | |
| | 10:08 | | of cases of promotion to full professor -- | | |
| | 10:09 | Q. | Okay. Thank you. | | |
| | 10:10 | A. | -- who were already tenured. | | |
| | 10:11 | | BY MS. UEBLER: | | |
| | 10:12 | Q. | Let's take a look now, if you could, | | |
| | 10:13 | | to the exhibit that was marked as P-27. | | |
| | 10:14 | | First, it's a letter dated | | |
| | 10:15 | | February 9th, 2011. Is this your letter that you | | |
| | 10:16 | | sent to Professor Braham? | | |
| | 10:17 | A. | It is. | | |
| 10:20 - 14:08 | **Constant, Caroline 2022-10-13** | | | 00:03:51 | CC_FINAL.3 |
| | 10:20 | | BY MS. UEBLER: | | |
| | 10:21 | Q. | All right. Let's look at this letter | | |
| | 10:22 | | together. The first paragraph makes reference to | | |
| | 10:23 | | already knowing Cathrine Veikos. Could you just | | |
| | 10:24 | | describe for the jury how you knew Professor Veikos | | |
| | 11:01 | | at that time? | | |

## CC_FINAL - Caroline Constant Final Designations

| DESIGNATION | SOURCE | | | DURATION | ID |
|---|---|---|---|---|---|
| | 11:02 | A. | She was a student at Harvard Graduate School | | |
| | 11:03 | | of Design at the time I was teaching there. I | | |
| | 11:04 | | actually still don't recall whether she was ever in | | |
| | 11:05 | | one of my classes, but I did know her. | | |
| | 11:06 | Q. | Okay. Now, if you could take a look | | |
| | 11:07 | | at the second paragraph of that same letter, which | | |
| | 11:08 | | is P-27. Would you read out loud for the jury what | | |
| | 11:09 | | you wrote there about Professor Veikos? | | |
| | 11:10 | A. | "It is evident from Veikos's record of | | |
| | 11:11 | | scholarly contributions that she has been | | |
| | 11:12 | | particularly productive since she began her | | |
| | 11:13 | | tenure-track position at the University of | | |
| | 11:14 | | Pennsylvania in 2003. In that period --" do you | | |
| | 11:15 | | want me to read the whole thing? | | |
| | 11:16 | Q. | That's okay. I just wanted to get | | |
| | 11:17 | | your overview as you had described it in your | | |
| | 11:18 | | letter. | | |
| | 11:19 | A. | Okay. | | |
| | 11:20 | Q. | And I think, there's another section, | | |
| | 11:21 | | I think, that I wanted to draw your attention to | | |
| | 11:22 | | about your opinion at the time. | | |
| | 11:23 | | If you look at the third | | |
| | 11:24 | | paragraph, the one that begins, "Although Veikos." | | |
| | 12:01 | | About four lines down, it starts "Veikos began." | | |
| | 12:02 | | There's a discussion of Professor Veikos's recent | | |
| | 12:03 | | scholarship on the work of Bo Bardi. Could you read | | |
| | 12:04 | | that? | | |
| | 12:05 | A. | "Veikos began this research in 2005 and set | | |
| | 12:06 | | her book proposal or manuscript --" in quote -- in | | |
| | 12:07 | | parentheses -- "to Routledge for review in December, | | |
| | 12:08 | | 2010. Unfortunately, she did not include any | | |
| | 12:09 | | portion of the manuscript in her dossier, which | | |
| | 12:10 | | would have aided in more fully evaluating her | | |
| | 12:11 | | contribution to existing Bo Bardi scholarship." | | |
| | 12:12 | Q. | All right. Let me stop you there. | | |
| | 12:13 | | So is it typical when you're | | |
| | 12:14 | | doing an external review to have the full | | |
| | 12:15 | | manuscripts for the publications in the dossier? | | |
| | 12:16 | A. | In my experience, absolutely, yes. | | |
| | 12:17 | Q. | Okay. Did the lack of the manuscript | | |
| | 12:18 | | at this time make you wonder whether it was even | | |

| DESIGNATION | SOURCE | | | DURATION | ID |
|---|---|---|---|---|---|
| | 12:19 | | completed? | | |
| | 12:20 | A. | Yes.  Of course. | | |
| | 12:21 | Q. | Okay.  All right.  Let's take a look | | |
| | 12:22 | | at the second page of this February 9th letter, | | |
| | 12:23 | | which is P-27. | | |
| | 12:24 | | I'm looking at the paragraph | | |
| | 13:01 | | that begins, "It is unclear." | | |
| | 13:02 | | And I know this is a little bit | | |
| | 13:03 | | awkward for all of us, but because of the way your | | |
| | 13:04 | | testimony is being presented, could you read out | | |
| | 13:05 | | loud what you had written in that paragraph for the | | |
| | 13:06 | | jury? | | |
| | 13:07 | A. | Yes.  "It is unclear why Veikos presents two | | |
| | 13:08 | | separate book proposals:  One focusing on the | | |
| | 13:09 | | writings of Bo Bardi and their theoretical | | |
| | 13:10 | | foundations, and the other on the built work and its | | |
| | 13:11 | | representation.  It would seem that a single | | |
| | 13:12 | | publication would more convincingly engage the | | |
| | 13:13 | | conceptual integration of theory and practice that | | |
| | 13:14 | | Veikos identifies as germane to Bo Bardi's work. | | |
| | 13:15 | | The time required to realize this more ambitious | | |
| | 13:16 | | undertaking was undoubtedly a factor in Veikos's | | |
| | 13:17 | | desire to produce a shorter book prior to coming up | | |
| | 13:18 | | for tenure.  Yet it is not clear from her dossier | | |
| | 13:19 | | how close she is to completing that project.  The | | |
| | 13:20 | | amount of research required for either undertaking | | |
| | 13:21 | | is prodigious.  I only wish that the dossier | | |
| | 13:22 | | manifested a clear indication of her ability to | | |
| | 13:23 | | achieve her commendable goals for either of these | | |
| | 13:24 | | publications, particularly for the first one for | | |
| | 14:01 | | which she indicates an expected publication date of | | |
| | 14:02 | | October, 2011." | | |
| | 14:03 | Q. | Okay.  So is it correct to say that at | | |
| | 14:04 | | the time you were writing this letter back to Penn, | | |
| | 14:05 | | you wanted to know the status of the book, both | | |
| | 14:06 | | whether the manuscript was complete and whether it | | |
| | 14:07 | | was accepted for publication? | | |
| | 14:08 | A. | Yes. | | |
| 15:14 - 18:02 | **Constant, Caroline 2022-10-13** | | | 00:02:36 | CC_FINAL.4 |
| | 15:14 | | THE WITNESS:  As I indicated in | | |

| DESIGNATION | SOURCE | | | DURATION | ID |
|---|---|---|---|---|---|
| | 15:15 | | the letter, specifically in the letter, the | | |
| | 15:16 | | status of the book project was a primary | | |
| | 15:17 | | concern of mine in terms of submitting an | | |
| | 15:18 | | evaluation.  The status of the manuscript, | | |
| | 15:19 | | the status of whether it had been accepted | | |
| | 15:20 | | for publication. | | |
| | 15:21 | | BY MS. UEBLER: | | |
| | 15:22 | Q. | All right.  Thank you for confirming. | | |
| | 15:23 | | Let's stay on that second page | | |
| | 15:24 | | of Exhibit 27, your February 9th letter, but go | | |
| | 16:01 | | towards the bottom.  There's a paragraph that | | |
| | 16:02 | | begins, "In conclusion." | | |
| | 16:03 | | Can you read that section until | | |
| | 16:04 | | about halfway down the paragraph? | | |
| | 16:05 | A. | "In conclusion, the range and potential | | |
| | 16:06 | | depth of Veikos's scholarship are commendable for a | | |
| | 16:07 | | faculty member who is trained and practicing as an | | |
| | 16:08 | | architect, rather than in scholarship.  Such tenure | | |
| | 16:09 | | cases are not easy to evaluate.  Although many | | |
| | 16:10 | | design faculty/practitioners also publish essays, it | | |
| | 16:11 | | is relatively unusual for a design faculty member | | |
| | 16:12 | | engaging in practice to also produce a book | | |
| | 16:13 | | manuscript - and one that promises to advance | | |
| | 16:14 | | scholarship in a significant area, as does Veikos's | | |
| | 16:15 | | forthcoming work on Lina Bo Bardi.  The status of | | |
| | 16:16 | | that book project remains a primary question, | | |
| | 16:17 | | however." | | |
| | 16:18 | Q. | Thank you.  And can you then skip over | | |
| | 16:19 | | to, really, it's that last sentence of your letter | | |
| | 16:20 | | on the third page?  Could you read that as well? | | |
| | 16:21 | A. | "It is clear that Veikos has embarked on a | | |
| | 16:22 | | significant and promising body of research on | | |
| | 16:23 | | Lina Bo Bardi, and I eagerly look forward to her | | |
| | 16:24 | | forthcoming book." | | |
| | 17:01 | | I guess I -- sorry, you asked | | |
| | 17:02 | | for the last sentence. | | |
| | 17:03 | Q. | That's okay.  Go ahead. | | |
| | 17:04 | A. | "Because the status of that book project | | |
| | 17:05 | | remains unclear at this time, however, I can only | | |
| | 17:06 | | cautiously support her case for tenure." | | |
| | 17:07 | Q. | Okay.  Was there any reason for your | | |

## CC_FINAL - Caroline Constant Final Designations

| DESIGNATION | SOURCE | | | DURATION | ID |
|---|---|---|---|---|---|
| | 17:08 | | cautious support, other than the lack of information | | |
| | 17:09 | | about the status of the Bo Bardi book? | | |
| | 17:10 | A. | That was the -- that was the reason, really. | | |
| | 17:11 | Q. | Did anyone from Penn ever contact you | | |
| | 17:12 | | to tell you that Professor Veikos's book had, in | | |
| | 17:13 | | fact, been accepted for publication? | | |
| | 17:14 | A. | No. | | |
| | 17:15 | Q. | Did you ever receive the manuscript | | |
| | 17:16 | | for the Bo Bardi book? | | |
| | 17:17 | A. | I did. | | |
| | 17:18 | Q. | Okay. Let me take -- I'm going to | | |
| | 17:19 | | have you look at another exhibit, which was | | |
| | 17:20 | | pre-marked as P-28. It's a letter dated March 26, | | |
| | 17:21 | | 2011. | | |
| | 17:22 | A. | Yes. | | |
| | 17:23 | Q. | Is this a follow-up letter that you | | |
| | 17:24 | | wrote to Professor Braham about Professor Veikos? | | |
| | 18:01 | A. | Yes. So this was -- this was written after | | |
| | 18:02 | | I received the manuscript. | | |
| 18:06 - 19:22 | **Constant, Caroline 2022-10-13** | | | 00:01:58 | CC_FINAL.5 |
| | 18:06 | | BY MS. UEBLER: | | |
| | 18:07 | Q. | All right. Did you have a chance to | | |
| | 18:08 | | review the book manuscript prior to submitting this | | |
| | 18:09 | | letter dated March 26th? | | |
| | 18:10 | A. | Well, because we were only given a very | | |
| | 18:11 | | short -- I was only -- sorry, I was only given a | | |
| | 18:12 | | very short time to review the manuscript, I think I | | |
| | 18:13 | | had maybe two or three days to do so. So all I | | |
| | 18:14 | | could read was Professor Veikos's introduction and | | |
| | 18:15 | | not her translation of the essay by Lina Bo Bardi. | | |
| | 18:16 | Q. | Okay. | | |
| | 18:17 | A. | So that -- which would have enabled me to | | |
| | 18:18 | | more fully assess her contribution. | | |
| | 18:19 | Q. | Okay. All right. Why don't we, for | | |
| | 18:20 | | this letter, for P-28, if you can look to the | | |
| | 18:21 | | third page, I want to look at your conclusion | | |
| | 18:22 | | paragraph again, because it's slightly changed from | | |
| | 18:23 | | the prior one. Could you read that out loud, the | | |
| | 18:24 | | "In conclusion" paragraph of this exhibit? | | |
| | 19:01 | A. | Yes. "In conclusion, the range and | | |

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| DESIGNATION | SOURCE | | | DURATION | ID |
|---|---|---|---|---|---|
| | 19:02 | | potential depth of Veikos's scholarship are | | |
| | 19:03 | | commendable for a faculty member who's trained and | | |
| | 19:04 | | practicing as an architect, rather than as a | | |
| | 19:05 | | scholar.  Such tenure cases are not easy to | | |
| | 19:06 | | evaluate.  Although many design faculty | | |
| | 19:07 | | practitioners also publish essays, it is relatively | | |
| | 19:08 | | unusual for a design faculty member to engage in | | |
| | 19:09 | | practice -- engaging in practice to also produce a | | |
| | 19:10 | | book manuscript - and one that promises to advance | | |
| | 19:11 | | scholarship in this significant area, as does | | |
| | 19:12 | | Veikos's forthcoming work on Lina Bo Bardi.  The | | |
| | 19:13 | | status of the book project remains a primary | | |
| | 19:14 | | question, however.  Acceptance for publication by | | |
| | 19:15 | | Routledge, if only provisional, would be a | | |
| | 19:16 | | significant factor on which to base a positive | | |
| | 19:17 | | evaluation of her case." | | |
| | 19:18 | Q. | Okay.  So is it correct to say that | | |
| | 19:19 | | your opinion about her scholarship in this letter | | |
| | 19:20 | | was more positive, but that it was still qualified | | |
| | 19:21 | | because of the lack of information about the book | | |
| | 19:22 | | status? | | |
| 19:24 - 19:24 | **Constant, Caroline 2022-10-13** | | | 00:00:01 | CC_FINAL.6 |
| | 19:24 | A. | Exactly. | | |
| 20:01 - 20:23 | **Constant, Caroline 2022-10-13** | | | 00:00:59 | CC_FINAL.7 |
| | 20:01 | Q. | Did you find out, as part of this | | |
| | 20:02 | | lawsuit, that Professor Veikos's book had, in fact, | | |
| | 20:03 | | been accepted for publication -- | | |
| | 20:04 | A. | Yes. | | |
| | 20:05 | Q. | -- by the board? | | |
| | 20:06 | A. | Yes.  As part of the lawsuit only. | | |
| | 20:07 | Q. | Right.  Okay.  Would knowing that | | |
| | 20:08 | | information at the time have influenced your | | |
| | 20:09 | | assessment as an external reviewer? | | |
| | 20:10 | A. | Definitely.  I would have much more | | |
| | 20:11 | | enthusiastically recommended her case for tenure. | | |
| | 20:12 | Q. | Would you have been in a position at | | |
| | 20:13 | | that point to be able to opine as to whether she | | |
| | 20:14 | | would achieve tenure at a peer institution? | | |
| | 20:15 | A. | In my opinion, she would achieve tenure at a | | |
| | 20:16 | | peer institution on that basis. | | |

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| | 20:17  Q. Let's take a look at exhibit -- what's | | |
| | 20:18      been marked as P-29, please. It's a one-page e-mail | | |
| | 20:19      dated May 6th. | | |
| | 20:20  A. Yes. | | |
| | 20:21  Q. Did you receive this e-mail from | | |
| | 20:22      Professor Braham on May 6th? | | |
| | 20:23  A. I did. | | |
| 21:11 - 22:12 | **Constant, Caroline 2022-10-13** | 00:01:09 | CC_FINAL.8 |
| | 21:11  Q. What did you understand | | |
| | 21:12      Professor Braham to be asking you in this e-mail | | |
| | 21:13      from May 6 of 2011? | | |
| | 21:14  A. He was asking me whether knowledge of the | | |
| | 21:15      fact that her tenure case had been extended a year | | |
| | 21:16      would have influenced my assessment. | | |
| | 21:17  Q. Okay. And what was your response? | | |
| | 21:18  A. I said it would not. | | |
| | 21:19  Q. Okay. And if I'm looking at the -- | | |
| | 21:20      focusing on the time here, it looks like you were | | |
| | 21:21      able to respond in just a couple of minutes from the | | |
| | 21:22      request; is that right? | | |
| | 21:23  A. That's right. | | |
| | 21:24  Q. At this point, so as of early May of | | |
| | 22:01      2011, did Professor Braham or anyone else at Penn | | |
| | 22:02      respond to your inquiry in your prior letters about | | |
| | 22:03      whether Professor Veikos's book had been accepted | | |
| | 22:04      for publication? | | |
| | 22:05  A. No. | | |
| | 22:06  Q. All right. Let's take a look at the | | |
| | 22:07      next exhibit, which was pre-marked as Exhibit P-30. | | |
| | 22:08      This is another e-mail exchange, this one dated | | |
| | 22:09      May 16th. | | |
| | 22:10      Did you have this e-mail | | |
| | 22:11      exchange with Professor Braham that day? | | |
| | 22:12  A. I did. | | |
| 22:16 - 23:09 | **Constant, Caroline 2022-10-13** | 00:00:44 | CC_FINAL.9 |
| | 22:16      BY MS. UEBLER: | | |
| | 22:17  Q. Can you tell us why you sent this | | |
| | 22:18      follow-up e-mail? | | |
| | 22:19  A. Because I noticed that the letter -- | | |
| | 22:20      sorry -- the e-mail asking me whether I was -- | | |

| DESIGNATION | SOURCE | | DURATION | ID |
|---|---|---|---|---|
| | 22:21 | whether the decision to give Professor Veikos an | | |
| | 22:22 | extra year -- or, sorry, that's not correct. To | | |
| | 22:23 | extend her review another year would have influenced | | |
| | 22:24 | my decision. They -- that was accompanied by the | | |
| | 23:01 | wrong letter from me. It was accompanied by the | | |
| | 23:02 | earlier letter from me, rather than the subsequent | | |
| | 23:03 | one. | | |
| | 23:04 | Q. I see. | | |
| | 23:05 | A. Well, I was concerned that the earlier | | |
| | 23:06 | letter was going through as written, rather than as | | |
| | 23:07 | amended. | | |
| | 23:08 | Q. I see. Okay. Thank you for | | |
| | 23:09 | explaining that. | | |
| 26:14 - 26:15 | **Constant, Caroline 2022-10-13** | | 00:00:03 | CC_FINAL.10 |
| | 26:14 | MS. UEBLER: Thank you. I have | | |
| | 26:15 | no further questions. | | |
| 28:02 - 28:20 | **Constant, Caroline 2022-10-13** | | 00:01:20 | CC_FINAL.11 |
| | 28:02 | You said, "Although her text constitutes an | | |
| | 28:03 | extremely promising beginning to her engagement of | | |
| | 28:04 | these questions, it comes closer to addressing the | | |
| | 28:05 | 'what' than the 'what is not' or even 'why.' In | | |
| | 28:06 | other words, at this stage of her inquiry, Veikos | | |
| | 28:07 | seems to be tracing the sources -- the what -- but | | |
| | 28:08 | without sufficiently theorizing the why." | | |
| | 28:09 | What did you mean by that? | | |
| | 28:10 | A. I meant that, in her book manuscript, she -- | | |
| | 28:11 | if I recall correctly. I haven't reread it in all | | |
| | 28:12 | these years. But I recall that she -- that | | |
| | 28:13 | Bo Bardi -- she traced extensive sources for | | |
| | 28:14 | Bo Bardi's ideas and interrelationship of Bo Bardi's | | |
| | 28:15 | ideas with contemporary theorizing, but did not go | | |
| | 28:16 | on to kind of analyze the specifics of those -- that | | |
| | 28:17 | idea. | | |
| | 28:18 | Q. Is analysis sometimes referred to as | | |
| | 28:19 | either theorizing or thought leadership? | | |
| | 28:20 | A. I suppose it could be. | | |
| 29:04 - 29:10 | **Constant, Caroline 2022-10-13** | | 00:00:23 | CC_FINAL.12 |
| | 29:04 | Q. Did you say -- did you use the word | | |
| | 29:05 | "thought leadership" in your March 26th, 2011 letter | | |
| | 29:06 | to Professor Braham, the second letter you wrote on | | |

| DESIGNATION | SOURCE | | DURATION | ID |
|---|---|---|---|---|
| | 29:07 | Professor Veikos's tenure candidacy? | | |
| | 29:08 | A. I don't believe I did. | | |
| | 29:09 | Q. Did you use the word "analysis"? | | |
| | 29:10 | A. I don't recall. | | |
| 30:03 - 30:07 | **Constant, Caroline 2022-10-13** | | 00:00:18 | CC_FINAL.13 |
| | 30:03 | Q. But that's what you wrote. You wrote | | |
| | 30:04 | that it addresses the "what" but not the "why," and | | |
| | 30:05 | that at this stage of the inquiry, Professor Veikos | | |
| | 30:06 | had not sufficiently theorized the "why," correct? | | |
| | 30:07 | A. Correct. | | |
| 30:19 - 31:09 | **Constant, Caroline 2022-10-13** | | 00:00:43 | CC_FINAL.14 |
| | 30:19 | Q. Did you ever reach out to Bill Braham | | |
| | 30:20 | to ask him about his handling of Professor Veikos's | | |
| | 30:21 | case? | | |
| | 30:22 | A. I did not. | | |
| | 30:23 | Q. Did you reach out to Genie Birch to | | |
| | 30:24 | ask her why she wrote the letter that she wrote or | | |
| | 31:01 | why she voted against tenure? | | |
| | 31:02 | A. I didn't know about her letter until many, | | |
| | 31:03 | many years later. So, no, I did not. | | |
| | 31:04 | Q. At any time before today, have you | | |
| | 31:05 | talked to anyone at Penn who was involved in the | | |
| | 31:06 | consideration of Professor Veikos for tenure to ask | | |
| | 31:07 | them why they reached the conclusions they did or | | |
| | 31:08 | about the tenure process as it unfolded? | | |
| | 31:09 | A. I did not. | | |
| 32:15 - 33:06 | **Constant, Caroline 2022-10-13** | | 00:00:34 | CC_FINAL.15 |
| | 32:15 | Q. Sure. In your tenure-review letters | | |
| | 32:16 | that you wrote for Professor Veikos, you noted that | | |
| | 32:17 | you hadn't spoken to her in many years before 2011, | | |
| | 32:18 | and you felt that that was a factor in your ability | | |
| | 32:19 | to be objective, that you weren't basing it on | | |
| | 32:20 | discussions with her or your knowledge of her | | |
| | 32:21 | personally. Instead, you were -- | | |
| | 32:22 | A. Yes. | | |
| | 32:23 | Q. -- pointing to or analyzing her | | |
| | 32:24 | scholarship. | | |
| | 33:01 | A. Right. | | |
| | 33:02 | Q. Is that right? | | |
| | 33:03 | A. Yes. | | |

**CC_FINAL - Caroline Constant Final Designations**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| | 33:04  Q. Is it important for an external | | |
| | 33:05      reviewer to be objective? | | |
| | 33:06  A. Yes. | | |
| 33:20 - 33:22 | **Constant, Caroline 2022-10-13** | 00:00:04 | CC_FINAL.16 |
| | 33:20  Q. Have you talked to her lawyer, Julie | | |
| | 33:21      Uebler? | | |
| | 33:22  A. Yes. | | |
| 34:02 - 34:02 | **Constant, Caroline 2022-10-13** | 00:00:01 | CC_FINAL.17 |
| | 34:02  Q. How many times? | | |
| 34:05 - 34:06 | **Constant, Caroline 2022-10-13** | 00:00:07 | CC_FINAL.18 |
| | 34:05  A. I don't know.  She asked me if I would | | |
| | 34:06      participate in this process. | | |
| 40:02 - 40:04 | **Constant, Caroline 2022-10-13** | 00:00:06 | CC_FINAL.19 |
| | 40:02  Q. Okay.  Did you ask Professor Braham | | |
| | 40:03      why he hadn't sent it to you sooner? | | |
| | 40:04  A. I didn't. | | |
| 48:07 - 49:01 | **Constant, Caroline 2022-10-13** | 00:01:04 | CC_FINAL.20 |
| | 48:07  Q. Okay.  Are you aware of any | | |
| | 48:08      communication to Bill Braham before March 24, 2011, | | |
| | 48:09      at 9:07 p.m. about Professor Veikos's manuscript | | |
| | 48:10      being accepted by the publisher? | | |
| | 48:11  A. I am not. | | |
| | 48:12  Q. Now, by that point, it was very | | |
| | 48:13      shortly before you prepared or finalized your | | |
| | 48:14      supplemental external review letter for | | |
| | 48:15      Professor Veikos, right? | | |
| | 48:16  A. Exactly. | | |
| | 48:17  Q. You sent that in on March 26th? | | |
| | 48:18  A. Yes. | | |
| | 48:19  Q. When did you start working on it? | | |
| | 48:20  A. I honestly can't recall.  I believe I had to | | |
| | 48:21      do it really quickly because I was very busy that | | |
| | 48:22      week with my teaching responsibilities, and I think | | |
| | 48:23      I only had a couple of days to work on it. | | |
| | 48:24  Q. Okay.  So -- | | |
| | 49:01  A. But really, I can't be precise here. | | |
| 50:21 - 50:24 | **Constant, Caroline 2022-10-13** | 00:00:13 | CC_FINAL.21 |
| | 50:21  Q. Was March 22nd of 2011 the last time | | |
| | 50:22      that Professor Braham communicated with you before | | |

| DESIGNATION | SOURCE | | DURATION | ID |
|---|---|---|---|---|
| | 50:23 | you wrote your March 26th letter? | | |
| | 50:24 | A. I believe it was, yes. | | |
| 56:20 - 57:08 | **Constant, Caroline 2022-10-13** | | 00:00:37 | CC_FINAL.22 |
| | 56:20 | Q. In your experience, do external | | |
| | 56:21 | reviewers sometimes have sharply differing opinions | | |
| | 56:22 | about a candidate's scholarship or qualifications? | | |
| | 56:23 | A. I would say not sharply differing, no. | | |
| | 56:24 | Q. Okay. But different sometimes. Some | | |
| | 57:01 | people will think a candidate has the requisite | | |
| | 57:02 | scholarship to be granted tenure, and other | | |
| | 57:03 | reviewers may see it differently. Have you seen | | |
| | 57:04 | that before? | | |
| | 57:05 | A. I have, but usually I think there is a | | |
| | 57:06 | strong consensus. | | |
| | 57:07 | Q. Is consensus important? | | |
| | 57:08 | A. I think so. | | |
| 64:03 - 64:24 | **Constant, Caroline 2022-10-13** | | 00:00:57 | CC_FINAL.23 |
| | 64:03 | Q. Okay. Now, let's -- I also want to | | |
| | 64:04 | draw your attention to two exhibits you looked at | | |
| | 64:05 | earlier, P-29 and P-30. Those e-mails -- I'll wait. | | |
| | 64:06 | Let's make sure you have it. | | |
| | 64:07 | A. Sorry, they're out of order now on my -- | | |
| | 64:08 | Q. Take your time. | | |
| | 64:09 | A. Okay. | | |
| | 64:10 | Q. Take your time. | | |
| | 64:11 | A. Got them. | | |
| | 64:12 | Q. Okay. So those e-mails were e-mails | | |
| | 64:13 | you exchanged with Professor Braham, correct? | | |
| | 64:14 | A. Yes. | | |
| | 64:15 | Q. And they were in May of 2011, correct? | | |
| | 64:16 | A. Yes. | | |
| | 64:17 | Q. And so that was months after the date | | |
| | 64:18 | on the publication contract that Mr. Banks presented | | |
| | 64:19 | to you a few minutes ago, correct? | | |
| | 64:20 | A. Correct. | | |
| | 64:21 | Q. And even at that time, in May of 2011, | | |
| | 64:22 | Professor Braham never communicated to you that | | |
| | 64:23 | Professor Veikos's book had been accepted for | | |
| | 64:24 | publication, did he? | | |
| 65:02 - 65:07 | **Constant, Caroline 2022-10-13** | | 00:00:14 | CC_FINAL.24 |

**CC_FINAL - Caroline Constant Final Designations**

| DESIGNATION | SOURCE | | | DURATION | ID |
|---|---|---|---|---|---|
| | 65:02 | A. | He did not. | | CC_FINAL.24 |
| | 65:03 | Q. | Did Professor Braham at any point, | | |
| | 65:04 | | including as of May, 2011, tell you that | | |
| | 65:05 | | Professor Veikos's book had been accepted for | | |
| | 65:06 | | publication? | | |
| | 65:07 | A. | He did not. | | |

| | |
|---|---|
| Plaintiff Direct | 00:21:09 |
| **TOTAL RUN TIME** | **00:21:09** |