IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHRINE VEIKOS,<br><br>*Plaintiff*,<br><br>v.<br><br>TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>*Defendant*. | Case No. 2:20-cv-04408-JDW |

### ORDER

**AND NOW**, this 21st day of July, 2023, upon consideration of Plaintiff's Motion For Reconsideration Or, In The Alternative, Certification For Interlocutory Appeal (ECF No. 133), I note the following.

**Reconsideration**

1. A court may reconsider a prior ruling only if the moving party shows (a) an intervening change in the controlling law, (b) the availability of new evidence that was not available when the court issued its order, or (c) the need to correct a clear error of law or fact or to prevent manifest injustice. *See U.S. ex rel. Shumann v. Astrazeneca Pharm., L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014). Based on this standard, courts should grant reconsideration "sparingly." *See In re Ex Parte Global Energy Horizons Corp.*, 647 F. App'x 83, 87 (3d Cir. 2016); *see also Romero v. Allstate Ins. Co.*, 1 F. Supp.3d 319, 420 (E.D. Pa.

2014). A motion for reconsideration may not be used to give a litigant a "second bite at the apple" on an argument on which it did not prevail the first time. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).

2. My Policies and Procedures do not permit responses to reconsideration motions unless I request them because the majority of reconsideration motions are nothing more than an attempt to re-argue issues that the parties presented and that I decided. I don't need more briefing to tell me what the parties have already told me, so I can decide most such motions without a response. Ms. Veikos's reconsideration motion falls into that camp. There's nothing new in her motion. She just disagrees with my conclusion and wants to argue the issue anew. As a result, I'm resolving the issue without asking for a response.

3. Although Ms. Veikos argues that I committed a clear error of law, her arguments just disagree with my interpretation of the facts or application of the law to the facts. That is not grounds for reconsideration. For example, she attempts to argue that I applied an incorrect legal standard in deciding to grant remittitur. But Ms. Veikos acknowledges the standard for remittitur is the standard that I applied: whether the damages award is so grossly excessive as to shock or offend the judicial conscience. *See Gagliardo v. Connaught Lab'ys, Inc.*, 311 F.3d 565, 574 (3d Cir. 2002) (citing *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 771 (3d Cir. 1987)). And Ms. Veikos does not deny that the Third Circuit approved of the case comparison method for determining whether an award

shocks the judicial conscience. I undertook that case comparison and determined that the jury award shocked the judicial conscience, not just that it was different from what I would have awarded. That Ms. Veikos disagrees with my determination does not mean that it was a clear error of law.

4. Ms. Veikos also claims that I ignored law and fact in assessing the amount of damages that the evidence supports. She argues that I "faulted [her] for relying 'only on her own testimony.'" (ECF 133-2 at 7.) I didn't fault Ms. Veikos. But I did conclude that her proof about emotional distress did not include evidence of physical symptoms of emotional distress, the need for medical treatment, reputational harm, or financial insecurity resulting from the 2012 tenure denial. She has only shown garden variety emotional distress. That distinction between garden variety emotional distress and something more often factors into judges' decisions to grant a remittitur. *See, e.g., Ridley v. Costco Wholesale Corp.*, 217 Fed. App'x 130, 136-37 (3d Cir. 2007) (upholding denial of remittitur where plaintiff experienced more than "garden-variety" emotional distress evidenced by ongoing depression, trouble sleeping, financial stress, withdrawal from family life, and lowered self-esteem).

5. The nature of Ms. Veikos's emotional distress distinguishes her from the plaintiffs in the cases she claims I ignored. For example, in *Johnston v. Sch. Dist. of Philadelphia*, Civ. A. No. 04-4948, 2006 WL 999966, at *10 (E.D. Pa. Apr. 12, 2006), the plaintiff testified that he experienced depression (to the point that his son asked if he was

3

contemplating suicide), problems sleeping, headaches, and vomiting, and a doctor prescribed him Zoloft for anxiety. His daughter testified that he "gained a very large amount of weight" and that he was "different," "depressed," and "negative." *Id.* He also testified that he was concerned his wife would leave him and that he had lost the respect of his family. *Id.* That he went from being a Director of Materials Management to working in a subterranean warehouse with the "stench of sewer gas that's constantly floating around… mice and rodents running around." *Id.* at *9. That he can no longer coach and hates going out. For all of this, Judge Bartle refused to remit Johnston's award of $500,000 in emotional distress damages. If Ms. Veikos believes her evidence of emotional distress from the 2012 tenure denial is comparable to the evidence described in *Johnston*, then we sat through different trials.

6. Ms. Veikos tries to explain away her lack of treatment for her emotional distress by pointing to her testimony about growing up in a culture that did not seek treatment for mental health problems. And there's no doubt that many people suffer needlessly because mental health problems carry with them a stigma that deters treatment. But my decision is not just about Ms. Veikos's lack of treatment, as such. It's about the nature of the distress she experienced more broadly. So that distinction doesn't change the outcome. Nor is it a new fact that would justify reconsideration.

7. Ms. Veikos's Motion doesn't really grapple with the distinction between her emotional distress from the 2011 tenure denial and the 2012 tenure denial, which I noted

in my opinion was an important part of my decision to remit the damages. The only time she addresses the issue is to argue that I misconstrued Professor Fierro's testimony. But in context, Prof. Fierro's testimony focused mostly on the distress that Ms. Veikos suffered in 2011, not in 2012. For example, Prof. Fierro testified that, after the 2011 tenure denial, Ms. Veikos had to find a new job and move within two weeks. At that time, Ms. Veikos was "devastated," she "cried," she "carried on" and she's been "devastated ever since." (ECF No. 127 at 70 (excerpts from deposition pages 169 and 170).) Read in context, Prof. Fierro's testimony describes lingering emotional distress from the 2011 tenure denial, not emotional distress from 2012. It would have been reasonable for the jury to assume that the 2012 tenure denial exacerbated that distress, but Prof. Fierro's testimony (and the rest of the proof at trial) demonstrates that most of the emotional distress that Ms. Veikos suffered came from the 2011 tenure denial, not the 2012 tenure denial.

8. Ms. Veikos's arguments about the harm that someone might suffer from losing a tenure position with its lifetime appointment also do not support reconsideration. While Ms. Veikos is correct about the emotional distress a person *might* experience from losing a job with lifetime appointment due to illegal retaliation, she does not reference any evidence of her *actual* emotional distress that I failed to consider in reaching my decision. *See Spence v. Bd. Of Educ. Of Christina Sch. Dist.*, 806 F.2d 1198, 1200-01 (3d Cir. 1986) (remittitur proper where "plaintiff did not submit sufficient evidence to prove

5

that emotional injuries actually occurred or that they were caused by defendant's conduct").

9. In any event, Ms. Veikos first lost that lifetime appointment—and would have experienced the resulting emotional distress—in 2011, not 2012. But again, she doesn't grapple with that distinction. She wants me to permit an award for all of the distress she experienced, regardless of whether it's tied to the act for which the jury held Penn liable.

### **Certification Of Interlocutory Appeal**

10. Pursuant to 28 U.S.C. § 1292(b), a court may only certify an order for interlocutory appeal when (1) the order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). "Congress intended that section 1292(b) should be sparingly applied." *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958).

11. The question that Ms. Veikos wants me to certify is not a question of law. Instead, it is a dispute about my interpretation of the facts and the application of law to those facts. Those issues are not questions of law and they are not appropriate for an interlocutory appeal. Although there does not seem to be a Third Circuit case on point, the Second Circuit has held "the correctness *vel non* of an order finding that a monetary

6

verdict is not supported by the evidence but rather is so high as to shock the judicial conscience, and requiring a new trial unless the claimant accepts a remittitur, is not a question of law as to which an immediate interlocutory appeal is appropriate under § 1292(b)." *Casey v. Long Island R. Co.*, 406 F.3d 142, 147 (2d Cir. 2005). I find the reasoning in *Casey* persuasive. The remedy is a new trial and subsequent appeal. *See* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2815 (3d ed.).

### **Scope Of New Trial**

12.    Ms. Veikos asks me to confirm the scope of a new trial. I understand her desire for clarity on this point because it might inform her decision (though in her supporting Memorandum, she suggests that she has already decided to opt for a new trial so she can preserve her right of appeal). (*See* ECF No. 133-2 at 13.) I can't resolve that issue without the benefit of adversarial briefing, though. I have Ms. Veikos's view. I will give Penn an opportunity to weigh in, and then I will clarify my Order.

13.    One aspect of Ms. Veikos's request for clarity on the scope of the new trial bears additional comment. The bench and the bar in this jurisdiction often interact informally, whether by letter or phone call. These informal interactions facilitate the administration of justice, but they rely on a relationship of mutual trust. Ms. Veikos's counsel pursued that process by asking me in a letter to clarify my ruling concerning the scope of a new trial. Obviously, I couldn't issue a binding ruling in off-the-record correspondence, but I did her counsel the courtesy of a substantive response to try to

provide some insight into my thinking. I don't have a problem with Ms. Veikos then seeking a more formal ruling on the record. But I do have a problem with her attaching to her Motion the email that I sent. Attaching that letter was, in my view, a breach of the trust that exists between the bench and bar to permit these types of communications. As a result, I no longer have confidence in Ms. Veikos's counsel to abide by the norms in this District for such communications. Therefore, I will suspend the portion of my Policies and Procedures permitting correspondence with the Court for Ms. Veikos and her counsel. Going forward, if she has any requests for me, even on administrative matters such as scheduling, she will have to file a motion that complies with the Local Rules.

In light of the above, it is **ORDERED** that Plaintiff's Motion For Reconsideration Or, In The Alternative, Certification For Interlocutory Appeal (ECF No. 133) is **DENIED**.

It is **FURTHER ORDERED** that, on or before August 4, 2023, Defendant shall submit a Memorandum, not to exceed five (5) pages, that provides Defendant's view on the scope of any new trial, if Ms. Veikos elects that option.

It is **FURTHER ORDERED** that the deadline for Ms. Veikos to decide whether to accept a remitted damages award or a new trial is extended to September 1, 2023.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.