IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CATHRINE VEIKOS,**<br><br>*Plaintiff,*<br><br>v.<br><br>**TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,**<br><br>*Defendant.* | **Case No. 2:20-cv-04408-JDW** |

## MEMORANDUM

The latest round of reconsideration requests in this case makes clear that everyone is unhappy with my post-trial rulings. The Trustees of the University of Pennsylvania once again ask me to hold that, if Cathrine Veikos opts for a new trial, the trial should focus on issues on which Penn lost at trial, and only those issues. Ms. Veikos once again returns to her argument that I should limit any new trial to emotional distress damages only. While both sides have shown me how entrenched in their positions they are, neither has satisfied the high burden for reconsideration. And, if everyone's unhappy with me, I must be doing something right. I will therefore deny Penn's Motion and Ms. Veikos's request that I reconsider my prior rulings.

I.  **BACKGROUND**

I have laid out the background of this case several times before. In brief, Ms. Veikos was a professor in the Architecture Department at the Weitzman School of Design at the University of Pennsylvania. In 2011, Penn denied her tenure. She complained that gender discrimination (including discrimination based on her status as a mother) tainted the review. Penn granted her a re-review in 2012, and it denied her tenure again. She complained that the tenure denial in 2012 was a product of gender discrimination and retaliation.

The Parties tried the case before a jury in February 2023. At the conclusion of the trial, the jury concluded that gender bias did not result in either tenure denial, but that retaliation caused the 2012 tenure denial. The jury awarded $1 million in damages for emotional distress. On May 2, 2023, I awarded Ms. Veikos $382,784 in front and back pay and entered judgment.

On May 30, 2023, Penn filed a motion for judgment as a matter of law or for a new trial or remittitur. On July 12, 2023, I denied Penn's judgment as a matter of law but held that the jury's damages award was excessive. I therefore gave Ms. Veikos the choice of a new trial or a remitted damages award of $100,000 in emotional distress damages (and therefore a total damages award of $482,784, including front and back pay). On July 19, 2023, Ms. Veikos filed a motion for reconsideration and also sought clarification as to the scope of any new trial. I denied reconsideration but solicited Penn's view on the scope of

a new trial. Penn filed its response on August 4, 2023. In its response, Penn argued that it would be "grossly unfair" for me to order a new trial on issues on which Penn prevailed at trial (ECF No. 135 at 2) and that this is not the type of case that requires a new trial on all issues.

On August 9, 2023, I ruled that any new trial would include all issues because I concluded that they were sufficiently interwoven to require a new trial on all of them. On August 18, 2023, Penn moved for reconsideration. In its Motion, Penn argues for the first time that a new trial on issues on which it prevailed at trial would violate the Seventh Amendment's Reexamination Clause. I asked Ms. Veikos for a response, and she used that invitation as an opening to argue once again that I should limit the scope of a new trial to emotional distress damages. Penn's Motion (and Ms. Veikos's implicit reconsideration motion) are now ripe for review.

## II.   STANDARD

### A.   Reconsideration

A court may reconsider a prior ruling only if the moving party shows (1) an intervening change in the controlling law, (2) the availability of new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See U.S. ex rel. Shumann v. Astrazeneca Pharm., L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014). Based on this standard, courts should grant reconsideration "sparingly." *See In re Ex Parte Global Energy Horizons Corp.*, 647 F. App'x

83, 87 (3d Cir. 2016); *see also Romero v. Allstate Ins. Co.*, 1 F. Supp.3d 319, 420 (E.D. Pa. 2014). A motion for reconsideration may not be used to give a litigant a "second bite at the apple" on an argument on which it did not prevail the first time. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995). That is, a motion for reconsideration should only address "factual and legal matters that the Court may have **overlooked**. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly." *In re Blood Reagents Antitrust Litig.*, 756 F. Supp.2d 637, 640 (E.D. Pa. 2010) (emphasis added).

### B.     Scope Of New Trial

District courts can grant new trials as "to all or any of the parties and on all or part of the issues." Fed. R. Civ. P. 59(a). A district court should not order a new trial unless "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931). Therefore, a new trial limited solely to damages is "improper where 'the question of damages … is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.'" *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455-56 (3d Cir. 2001) (quoting *Gasoline Prods.*, 283 U.S. at 500).

## III. ANALYSIS

### A. Penn's Motion

Penn's Motion does not state a basis for reconsideration because it just takes issue with my application of fact to law. *First*, Penn argues that I "applied the wrong legal standard in evaluating the scope of the new trial." (ECF No. 139-1 at 2.) But Penn doesn't actually think that I applied the wrong legal standard. It agrees that *Gasoline Products* and *Pryer* supply the legal standard. So, despite the heading in its brief, it's not as though Penn has found some other legal standard that should apply here. Instead, as Penn acknowledges earlier in its brief, its argument is that I "incorrectly **applied** the standards" in *Gasoline Products* and *Pryer*. (*Id.* at 2 (emphasis added)). Reconsideration is not an opportunity for Penn to have me rethink the way that I applied the standard to the facts of this case, though.

To get around this problem, Penn argues for the first time that I overlooked the Seventh Amendment's Reexamination Clause. Penn could have made this argument when it responded to my Order concerning clarification of the scope of the new trial. It didn't. It can't now use a reconsideration motion to argue what it omitted from its brief the first time around. Reconsideration is not a chance to rethink the arguments you make in the hope that the Judge will buy something new. The time to make that argument is the first time around. That, alone, is enough for me to deny Penn's motion, but I won't just rely on that failure because Penn's argument is also wrong on the merits.

The Seventh Amendment provides that in "[s]uits at common law ... no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. The Reexamination Clause does not apply in this circumstance. *First*, at common law, a trial judge had broad power to order a new trial, including the use of the remittitur power. See *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 433 (1996). Because courts had the power at common law to set aside a verdict, my use of remittitur does not violate the Seventh Amendment.

Although Penn cites some cases about the Reexamination Clause to support its argument, none addresses the Reexamination Clause. Instead, Penn makes its Reexamination Clause argument based on logical jumps from factual situations that Penn contends are analogous, such as bifurcated trials, not because any case addresses the issue at hand. *See, e.g.*, *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1993). For example, in *In re Lower Lake Erie*, a jury on remand was only to consider damages, so it could not reexamine the still-extant liability jury's causation opinion. That makes sense because the Reexamination Clause bars the possibility that two **<u>extant</u>** jury verdicts will address the same issue. But in the context of a new trial, the first jury verdict gets wiped away by the Court's ruling. When the second jury then returns a verdict, its verdict is the only verdict that addresses the issues from that trial. That outcome does not violate the Reexamination Clause, so Penn's Seventh Amendment argument fails.

Penn also argues about "fundamental fairness." (ECF No. 139-1 at 12.) But fairness cuts more than one way in this case. As I have explained, the evidence relevant to Ms. Veikos's emotional distress claim ties inextricably to the evidence of the 2012 tenure denial. There's no way for the jury to consider one without the other. And there's no way for the jury to consider or evaluate the 2012 tenure denial without also considering the 2011 tenure denial. For example, the jury will have to consider all of the facts about the selection of external reviewers, including whether Penn colored their views in 2011 and whether it then chose (or had no choice but to choose) lesser reviewers for the 2012 review. That's not to say that Penn won't suffer some unfairness in the event of a new trial. But the interwoven nature of the evidence in this case cuts against that unfairness and would make it unfair to limit Ms. Veikos's cases artificially, which is what Penn's preferred outcome would cause.

Finally, Penn asks me to clarify that a new trial would not include punitive damages. I see no basis to do that at this point. The remedies available in a new trial will be the remedies available. While the evidence of punitive damages is not interwoven with the evidence of liability and damages, I am not aware of any case suggesting that I can or should award a new trial but preemptively limit the universe of potential remedies. If Ms. Veikos opts for a new trial, she should get a new trial, not one with lesser remedies than she had the first time around.

### B.     Ms. Veikos's Implicit Motion

In response to Penn's Motion, Ms. Veikos argues that the jury's decision on damages was "distinct and separable" from the decision on liability. (ECF No. 141 at 3). There are two problems with that argument. *First*, although it's an argument for me to reconsider my prior ruling, Ms. Veikos does not point to anything that might satisfy the standard for reconsideration. She just rehashes the same arguments she made when she first asked me to clarify my ruling on Penn's new trial motion. In effect, she wants a second bite at the apple, but that's not the purpose of reconsideration.

*Second*, Ms. Veikos's argument is wrong now just like it was the last time I considered it. This isn't just a case with overlapping facts, as she suggests. To prove her emotional distress, Ms. Veikos must show "the nature and circumstances of the wrong and its effect on" her. *Carey v. Piphus*, 435 U.S. 247, 264 (1978). To show that nature and circumstances of the wrong, she will have to present the full story leading to her termination. That's not just some overlap, it's a full-on interweaving. While there might be some cases where a new trial could tackle damages alone, this isn't one of them.

### IV.    CONCLUSION

The Parties might disagree with my decisions, but it's far past time to stop arguing the same arguments again and again. No one has shown a basis for me to reconsider my decision about the scope of a potential new trial. The case needs to have a conclusion or a new trial. If my posttrial rulings are wrong, the Parties can make their case in the Court

of Appeals whenever the time comes. For now, Ms. Veikos must make her election as to the remitted damages award or a new trial on or before September 26, 2023. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 12, 2023